UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

OM GROUP, INC.,

                Plaintiff,

vs.                              Case No.  2:05-cv-546-FtM-33SPC

JAMES P. MOONEY,

                Defendant.
_____/


**ORDER**

    This matter comes before the Court upon Defendant James P.
Mooney's Motion for Preliminary Injunction (Doc. # 11), filed on
December 20, 2005.  Upon due and careful consideration of
Defendant's Motion and his Memorandum in Support of the Motion for
Preliminary Injunction (Doc. # 17), as well as Plaintiff's Response
in Opposition (Doc. # 24) and the parties' arguments at the Court's
January 4, 2006, hearing, it is hereby ordered that Defendant's
Motion for Preliminary Injunction is DENIED.  In addition, for the
reasons stated herein, Plaintiff's Motion to Compel Arbitration
(Doc. # 25) is DENIED.

**I.  OVERVIEW**

    On November 21, 2005, Plaintiff OMG filed a Complaint (Doc. #
1) against Defendant Mooney in this Court.  The Complaint consists
of two counts.  Count I is titled "Disgorgement of Bonuses,
Compensation and Profits Pursuant to 15 U.S.C. § 7243."  Under

Count I, OMG states that "Mooney is required to reimburse OMG for those bonuses, other incentive-based and equity-based compensation, and profits from the sale of OMG securities as identified above." (Doc. # 1, p. 3). Count I describes bonuses and other incentive-based and equity-based compensation that Mooney received while CEO/Chairman of OMG. Count II of the Complaint is titled "Declaratory Judgment" and in it OMG seeks a declaration from the Court that it has no duty to award Mooney 450,000 shares of restricted stock, which Mooney claims are owed him.

On December 20, 2005, Mooney answered OMG's Complaint and set forth eight counterclaims. (Doc. # 6). The same day, Mooney filed a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. # 11) that is the subject of this Order. The Court denied the Motion for Temporary Restraining Order (Doc. # 15) on December 21, 2005, setting a preliminary injunction hearing on January 4, 2006.

On December 26, 2005, Mooney filed a Supplemental Memorandum in Support of the Motion for Temporary Restraining Order and Preliminary Injunction (Doc. # 17). On December 29, 2005, OMG filed a Response in Opposition to the Motion for Temporary Restraining Order and Preliminary Injunction (Doc. # 24), along with a Motion to Compel Arbitration (Doc. # 25). On January 3, 2006, Mooney filed a Motion for Leave to File Reply Brief in Support of his Motion for Preliminary Injunction (Doc. # 27). Because it was a Reply to a Response and did not comply with the Local Rules, the Court denied Mooney's Motion for Leave during the

2

hearing on January 4, 2006.

Before the Court can reach the injunction issue, it must determine whether Mooney's claims should be brought before an arbitrator rather than the district court.  OMG argues that the Court should not issue the injunction because Mooney's claims fall under the arbitration provision set forth in the parties' Employment Agreement.  Mooney has not disputed that his claims would ordinarily fall under the arbitration provision, but  claims that OMG has waived its right to arbitrate because it filed its Complaint in district court.

## II.  ARBITRATION AND WAIVER

The Court must satisfy itself that Mooney's claims are not subject to arbitration before it can address Mooney's request for Mandatory Preliminary Injunction.  Under the Federal Arbitration Act, a district court must compel arbitration and stay the underlying action if the parties had an earlier agreement to arbitrate their dispute.  9 U.S.C. § 3 (2005).  It is essential to the Court's inquiry to determine whether the parties agreed to arbitrate the dispute at hand, because absent such an agreement a court cannot require parties to arbitrate disputes that they have not  previously agreed to arbitrate.  See Telecom Italia v. Wholesale Telecom Corp., 248 F.3d 1109, 1114 (11th Cir. 2001)(citing United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)).  According to Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983), the court makes this determination by applying "federal

substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Id. It is well-settled that the district court should examine this issue keeping in mind

> a healthy regard for the federal policy favoring arbitration . . . The Arbitration Act establishes that, as a matter of law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

Id. at 24-25.

In this case, it is undisputed that the parties signed an Employment Agreement containing an arbitration provision. In the Employment Agreement, the parties agreed that "[a]ny dispute arising out of this Agreement (except a dispute relating to this Section 17 or Exhibit A attached hereto) shall be submitted to the Alternative Dispute Resolution procedures described in Exhibit A attached hereto." Employment Agreement, p. 8, ¶ 17. Exhibit A further clarifies that "[s]hould any dispute between the parties to the Agreement arise with respect to the Agreement (except as provided in Section 17 thereof) it shall be resolved in accordance with" the procedures set forth in the parties' Alternative Dispute Resolution agreement. Id. at Exhibit A, § 1.1. If, after the negotiation period, the disputes have not been resolved, then "[a]ll disputes arising out of or in connection with the Agreement, including disputes relating to the breach, interpretation, termination, or validity, of the Agreement, shall finally be settled by arbitration . . ." Id. at Exhibit A, § 9(a).

4

Mooney has not disputed that his claims would ordinarily fall within the scope of the arbitration provision of the Employment Agreement.  Mooney nonetheless argues that his claims do not belong before an arbitrator because, in filing their lawsuit in federal court, OMG waived its right to arbitrate.  "An agreement to arbitrate, 'just like any other contract . . ., may be waived.'" Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1315 (11th Cir. 2002)(citing Burton-Dixie Corp. v. Timothy McCarthy Constr. Co., 436 F.2d 405, 407 (5th Cir. 1971)).  "Waiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party." Morewitz v. West End of England Ship Owners Mut. Prot. & Indem. Ass'n, 62 F.3d 1356, 1366 (11th Cir. 1995)(citing Price v. Drexel Burnham Lambert, Inc., 791 F.2d 1156, 1158 (5th Cir. 1986)).

There is a two part test that courts utilize to determine if a party has waived its right to arbitrate.  First, the court must determine whether "'under the totality of the circumstances,' the party 'has acted inconsistently with the arbitration right.'" Id. at 1316 (citing S&H Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507, 1514 (11th Cir. 1990)).  Second, the court must determine whether, in acting inconsistently with the arbitration right, that party "has in some way prejudiced the other party." Id.

When analyzing waiver, a court should be "mindful of the Supreme Court's admonition that 'questions of arbitrability must be

addressed with a healthy regard for the federal policy favoring arbitration.' . . . Nevertheless, the doctrine of waiver is not an empty shell." <u>Morewitz</u>, 62 F.3d at 1365-66.  The burden of proving waiver rests with the party seeking to prove waiver.  <u>Marubeni Corp. v. Mobile Bay Wood Chip Ctr.</u>, 2003 U.S. Dist. LEXIS 13675, at *46 (S.D. Ala. June 16, 2003).

### A.  Acts Inconsistent with OMG's Right to Arbitrate

The issue of whether OMG acted inconsistently with its right to arbitrate when it filed its Complaint in this Court is somewhat complex.   OMG argues that the arbitration provision requires arbitration for "any dispute arising out of this agreement," not "any disputes between the parties" or "any disputes arising out of Mooney's employment."  At the hearing, OMG's counsel conceded that the company's claims arose out of Mooney's conduct as an employee. Regardless of this concession, counsel argued that the more important issue is that the language of an arbitration provision must be broad enough to encompass statutory claims and not be limited to contract claims.  OMG then asserted that the arbitration provision in this case does not encompass statutory claims.

The first case OMG cited is <u>Paladino v. Avnet Computer Techs.</u>, 134 F.3d 1054 (11th Cir. 1998).  This case involves an arbitration provision contained in an employment agreement, which stated that:

> I recognize that during the course of my employment differences can arise between the Company and me.   To that end, the Company and I consent to the settlement by arbitration of any controversy or claim arising out of or relating to my employment or the termination of my employment. . . . The arbitrator is authorized to award damages for breach of contract only, and shall have no

6

authority whatsoever to make an award of other damages.

Id. at 1056.  The language on which OMG presumably relies is that part of the Paladino opinion reciting precedent from another case, which stated that:

> a mandatory arbitration clause does not bar litigation of a federal statutory claim, unless three requirements are met.  First, the employee must have agreed individually to the contract containing the arbitration clause. . . . Second, the agreement must authorize the arbitrator to resolve federal statutory claims– it is not enough that the arbitrator can resolve contract claims, even if factual issues arising from those claims overlap with the statutory claim issues.  Third, the agreement must give the employee the right to insist on arbitration if the federal statutory claim is not resolved to his satisfaction in any grievance process.

Id. at 1059 (citing Brisentine v. Stone & Webster Eng'g Corp., 117 F.3d 519 (11th Cir. 1997)).  Certainly, this language, when viewed in isolation, appears to favor OMG's argument.  However, the Paladino court specifically limited that portion of its decision. It stated explicitly that "Brisentine does not stand for the proposition that an arbitration agreement must specifically list every federal or state statute it purports to cover."  Id.  In fact, the Paladino court cited to a previous Eleventh Circuit case that held that Title VII claims were subject to arbitration where the arbitration agreement stated that the parties agreed to arbitrate "any dispute, claim or controversy that may arise between me and my firm, or a customer or any other person that is required to be arbitrated under the rules, constitution or by-laws of the organizations with which I register."  Id. (citing Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698, 700 (11th Cir. 1992)).  Although

7

the language in the OMG/Mooney agreement is not as broad as the language in the Bender agreement, it is certainly significantly broader than the language in Paladino, which put the parties on notice that  the arbitrator could only award damages for breach of contract.

The emphasis in Paladino is on the fact that the parties should be on notice that statutory claims will be covered under the agreement.  The court said that to cover statutory claims, the arbitration agreement must "contain terms that generally and fairly inform the signatories that it covers statutory claims." Id.  In analyzing the arbitration agreement between Paladino, the employee, and Avent, the employer, the court determined that the language that "I . . . consent to the settlement by arbitration of any controversy or claim arising out of or relating to my employment or termination of my employment," when considered alongside the language that "[t]he arbitrator is authorized to award damages for breach of contract only, and shall have no authority whatsoever to make an award of other damages," was "woefully deficient" to put Paladino on notice that statutory claims would be subject to the arbitration agreement. Id. Ultimately, this Court is not at all convinced that Paladino stands for the proposition that an arbitration agreement must specifically include language stating that it includes statutory claims.  Rather, the Paladino court held that "[t]he FAA creates a presumption in favor of arbitrability; so, parties must clearly express their intent to _exclude_ categories of claims from their arbitration agreement." Id. at 1057 (emphasis added).

Notwithstanding the clear language in <u>Paladino</u>, the Eleventh Circuit has underlined the concept that an arbitration provision need not list every claim covered, specifically noting that "[a] party cannot avoid arbitration . . . because the arbitration clause uses general, inclusive language, rather than listing every possible specific claim." <u>Brown v. ITT Consumer Fin. Corp.</u>, 211 F.3d 1217, 1221 (11th Cir. 2000).  The <u>Brown</u> court also noted that "[a]n arbitration agreement is not vague solely because it includes the universe of the parties' potential claims against each other." <u>Id.</u> The language in the agreement between OMG and Mooney fairly put both parties on notice that statutory claims would be subject to the arbitration agreement by providing that "*any* dispute between the parties to the Agreement . . . with respect to the Agreement . . ." would be subject to arbitration.  See Employment Agreement, Exhibit A, § 1.1 (emphasis added).  The fact that the agreement includes the universe of the parties' claims with respect to the Agreement and did not specifically state that a Sarbanes Oxley claim would be covered is not dispositive.

Even if OMG were to argue that the language in paragraph 9 of the arbitration agreement, which states that "[a]ll disputes arising out of or in connection with the Agreement which are not resolved by the foregoing procedure, including disputes relating to the breach, interpretation, termination or validity of the Agreement, shall be settled by arbitration . . .", was meant as a limitation on the types of claims covered, that argument would be misguided. First, the preceding portions of the arbitration agreement stated

9

twice that "*any* dispute" arising with respect to the agreement would be arbitrated, not just contractual issues.   Second, the word "including" indicates that, among other things, contractual issues will go to the arbitrator.   The fact that the arbitration provision includes disputes over contract issues does not mean that contractual issues *alone* will go to the arbitrator.

Counsel for OMG also argued that <u>Sibley v. Tandy Corp.</u>, 543 F.2d 540 (5th Cir. 1976), is instructive on the issue of whether OMG waived its right to arbitration when it filed its Complaint containing a statutory claim.   In <u>Sibley</u>, the Fifth Circuit held that claims under the Federal Exchange Act of 1934 are generally not subject to arbitration.   <u>Sibley</u>, 543 F.2d at 543.   The basis for this holding was <u>Wilko v. Swan</u>, 346 U.S. 427 (1953), which stated that the Securities Act of 1933 prohibited arbitration of claims brought under the Act.   <u>Wilko</u>, 346 U.S. at 438.   The <u>Sibley</u> court relied upon the analysis in <u>Wilko</u> because it believed that there were meaningful similarities between the 1934 Exchange Act, which was the basis for the claims in <u>Sibley</u>, and the 1933 Securities Act, which was the basis for the ruling in <u>Wilko</u>.   However, <u>Wilko</u> was expressly overruled in a later United States Supreme Court holding. <u>See</u> <u>Rodriquez de Quijas v. Shearson/Am. Express</u>, 490 U.S. 477 (1989)("The Court's characterization of the arbitration process in <u>Wilko</u> is pervaded by what Judge Jerome Frank called 'the old judicial hostility to arbitration.' . . . To the extent that <u>Wilko</u> rested on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be

complaintants, it has fallen far out of step with our current strong endorsements of the federal statutes favoring this method of revolving disputes."). Furthermore, the United States Supreme Court in <u>Shearson/Am. Express v. McMahon</u>, 482 U.S. 220 (1987) held that agreements to arbitrate the Securities Exchange Act claims were enforceable. <u>Id.</u> at 238.

The Court now turns its analysis to other Eleventh Circuit decisions on point. In <u>Ivax</u>, the Eleventh Circuit reaffirmed that there is a presumption in favor of arbitrability and that parties must express an intent to exclude categories of claims from their arbitration agreement. <u>Ivax</u>, 286 F.3d at 1320 (citing <u>Paladino</u>, 134 F.3d at 1057)(citing <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 945 (1995))). Furthermore, the <u>Ivax</u> court reiterated what many other courts have noted when analyzing the issue of arbitrability, which is that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . ." <u>Id.</u> (citing <u>Moses H. Cone Mem'l Hosp.</u>, 460 U.S. at 24-25). A reading of the language of the arbitration provision in the OMG/Mooney contract reveals that there is no expression of an intent to exclude statutory claims from the agreement. The arbitration provision states more than once that "*any* disputes . . . with respect to the Agreement" would be subject to the arbitration provision. To hold that the word "any" put the parties on notice that statutory claims were exempted would be contrary to logic and the principles of contract interpretation. Moreover, when examining whether OMG's statutory claims were arbitrable, the Court is bound

by the well-established presumption in favor of arbitrability, which bolsters the argument that the parties intended to arbitrate any disputes that arose with respect to the Agreement, including statutory claims.  This Court finds that the OMG/Mooney arbitration provision encompasses statutory claims.

Notwithstanding this argument, OMG argues that the statutory claim does not "arise with respect to" the Employment Agreement. In Telecom Italia, the court examined an arbitration agreement that called for arbitration of "any disputes arising out of or relating to" the lease between two companies.  Telecom Italia, 248 F.3d at 1114.  In this tort case, when analyzing which claims can be fairly said to be "related to" the contract, the court looked at whether the tort or breach in question "was an immediate, foreseeable result of the performance of contractual duties."  Id. at 1116.  The court determined that "[d]isputes that are not related— with at least some directness— to performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause."  Id.  "However, where the dispute occurs as a fairly direct result of the performance of contractual duties . . . then the dispute can fairly be said to arise out of or relate to the contract in question, and arbitration is required."  Id.  Gregory v. Electro-Mech. Corp., 83 F.3d 382 (11th Cir. 1996), also urged courts to examine the nature of the underlying dispute, noting that "[w]hether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted."

12

Id. at 384.

Applying Telecom Italia and Gregory to the facts of the case at hand, this Court examines the Complaint to determine whether the Sarbanes Oxley claim "arises with respect to" the Employment Agreement.  The first question is whether the Sarbanes Oxley claim is related with any directness to performance of duties specified by the Employment Agreement.  Counsel for OMG conceded during the hearing that the Sarbanes Oxley claim arises out of Mooney's conduct as an employee.  The Court agrees with Counsel for OMG and finds that the fact that the Sarbanes Oxley claim arises from Mooney's conduct as an employee is an indication that the claim "arises with respect to" the Employment Agreement and thus was subject to the arbitration provision.

Several parts of the Employment Agreement are instructive here. First, the Agreement sets forth a general description of Mooney's duties as an OMG executive:

> Executive shall serve as President and Chief Executive Officer of Employer and as President of MCI and shall render such services of an executive and administrative character to Employer and MCI as Executive provided to MCI prior to the Closing Date . . . For as long as Executive is so employed, he shall devote his full productive time, energy and ability to his duties, except for incidental attention to the management of his personal investments.

See Employment Agreement, p. 1, ¶ 1(a).  The Employment Agreement also covers the issue of  Mooney's compensation as CEO and President of the company.  See Employment Agreement, p. 2, ¶¶ 1(c) Base  Compensation;  1(d)  Incentive  Compensation;  1(e)  Fringe

Benefits; and p. 3, ¶ 1(g) Stock Options.  Returning to the factual

allegations in the Complaint, the Sarbanes Oxley claim refers to the

fact that:

> Mooney received bonuses and other incentive-based and
> equity-based compensation for OMG during the respective
> 12-month periods following the initial public issuance or
> filing of the financial documents embodying the financial
> reporting requirements for the years 1999 through 2002
> and three quarters of 2003 that were ultimately restated.
> . . . Pursuant to 15 U.S.C. § 7243, Mooney is required to
> reimburse OMG for those bonuses, other incentive-based
> and equity-based compensation, and profits from the sale
> of OMG securities identified above.

(Doc. #1, p. 3, ¶¶ 13, 15).  Section 7243 of the Sarbanes Oxley Act

states that:

> If an issuer is required to prepare an accounting
> restatement due to the material noncompliance of the
> issuer, as the result of misconduct, with any financial
> reporting requirement under the securities laws, the
> chief executive officer and chief financial officer of
> the issuer shall reimburse the issuer for (1) any bonus
> or other incentive-based or equity-based compensation
> received by that person from the issuer during the 12-
> month period following the first public issuance or
> filing with the Commission (whichever first occurs) of
> the financial document embodying such financial reporting
> requirement; and (2) any profits realized from the sale
> of securities of the issuer during that 12-month period.

15 U.S.C. § 7243.

Assuming that OMG proved the other elements of its Sarbanes

Oxley claim, it would have to demonstrate to the Court that Mooney

received a "bonus or other incentive-based or equity-based

compensation" during the relevant period of his employ.  This part

of the claim is unavoidably tied to the Employment Agreement, which

sets forth the terms of Mooney's compensation.

The Court agrees with Mooney's argument that the ability to

bring a disgorgement action under the Sarbanes Oxley Act is a dispute "aris[ing] with respect to" the Employment Agreement, which makes it arbitrable under the Agreement.  The set-off provision to which Mooney's counsel referred states that "[n]either Employer nor MCI shall have any right of set-off or counterclaim, in respect of any claim, debt or obligation, against the payments or benefits to be made or provided to Executive under this Agreement."  See Employment Agreement, p. 6, ¶ 9.  Mooney's argument is that the disgorgement action bears directly on the set-off provision of the Employment Agreement because the court cannot analyze whether Mooney would be liable under Section 304 without also analyzing the set-off provision in the Agreement.  When OMG filed its Sarbanes Oxley claim against Mooney and began withholding severance payments, it did so in violation of its previous agreement that it would have no right of set-off under the Agreement.

Given the law of this circuit and the facts of this case, the Court is persuaded that OMG's Sarbanes Oxley claim was subject to the arbitration provision in the Employment Agreement.  This is particularly true when taken in light of the well-established rule that doubts about the arbitrability of claims should be resolved in favor of arbitration and the mandate that courts have a "healthy regard" for the federal policy favoring arbitration.  Because the claim was arbitrable, it should not have been filed in federal court but rather should have been submitted to an arbitrator.  When the claim was not submitted to an arbitrator, OMG waived its right to arbitrate.

**B. Prejudice to Mooney**

The fact that the claim was arbitrable is not enough to end the inquiry under Eleventh Circuit case law.  There must also be a finding that OMG prejudiced Mooney when it filed its claim in federal court.  "When one party reveals a disinclination to resort to arbitration on any phase of suit involving all parties, those parties are prejudiced by being forced to bear the expenses of a trial." E.C. Ernst, Inc. v. Manhattan Constr. Co., 559 F.2d 268, 269 (5th Cir. 1977); see also S&H Contractors, Inc., 906 F.2d at 1507 ("When determining whether the other party has been prejudiced, we may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process.").  The purpose of an arbitration provision is to allow the parties to avoid the expenses of litigation.  Id.  "Substantially invoking the litigation machinery qualifies as the kind of prejudice . . . that is the essence of waiver." Id.

OMG argued that there was no prejudice to Mooney because the length of time the parties have spent in litigation is not great. However, the Court finds that the length of the litigation process is not the only factor to consider.  While litigation in this case has not spanned a great length of time, it has been intense for the brief period since its inception.  Since OMG filed its Complaint, Mooney was required to file numerous pleadings with the court, specifically an Answer and Counterclaim (Doc. # 6), two Motions to Appear Pro Hac Vice (Docs. # 7, 8), a Motion to Dismiss (Doc. # 9), a Certificate of Interested Persons and Corporate Disclosure

16

Statement (Doc. # 10), the present Motion for Temporary Restraining Order and Preliminary Injunction (Doc. # 11), a Memorandum in Support of the Motion for Temporary Restraining Order and Preliminary Injunction (Doc. # 17), a Notice of Pendency of Other Actions (Doc. # 18), and a Motion for Leave to File Reply Brief (Doc. # 27).  Of course, Mooney also appeared with counsel at the hearing held before this Court on January 4, 2006.  In the preparation of these documents, Mooney almost certainly incurred substantial attorneys fees that he is now obligated to pay.  Were it not for the fact that OMG filed in federal court, Mooney would not have incurred these expenses; thus, the Court finds that prejudice to Mooney resulted from OMG's actions.

In sum, the Court finds that OMG waived its right to arbitration when it filed its Sarbanes Oxley claim in federal court. The Court also finds that Mooney has been prejudiced by OMG's disinclination to resort to arbitration.  Given these findings, it is now appropriate for the Court to turn to Mooney's request for injunctive relief.

### III.  MANDATORY PRELIMINARY INJUNCTION

Mooney has requested that this Court issue a mandatory preliminary injunction ordering OMG to resume making severance payments to him according to the Employment Agreement.  As the Fifth Circuit noted in United States v. Board of Education of Greene County, Mississippi, 332 F.2d 40, 45-46 (5th Cir. 1964), "[t]here is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more

17

dangerous in a doubtful case, than the issuing of an injunction."
The Eleventh Circuit has also emphasized that "[b]ecause a
preliminary injunction is 'an extraordinary and drastic remedy,' its
grant is the exception rather than the rule, and plaintiff must
clearly carry the burden of persuasion." Siegel v. LePore, 234 F.3d
1163, 1176 (11th Cir. 2000)(citing United States v. Lambert, 695
F.2d 536, 539 (11th Cir. 1983))(quoting Texas v. Seatrain Int'l,
S.A., 518 F.2d 175, 179 (5th Cir. 1975))).  In its previous Order,
the Court noted that there is a particularly heavy burden of
persuasion on the moving party when it requests a mandatory
injunction.  See Miami Beach Fed. Sav. & Loan Ass'n v. Callander,
256 F.2d 410, 415 (5th Cir. 1958)("A mandatory injunction . . .
especially at the preliminary stage of proceedings, should not be
granted except in rare instances in which the facts and law are
clearly in favor of the moving party."); Bd. of Educ. of Greene
County, Mississippi, 332 F.2d at 46 ("mandatory injunctions are
rarely issued and interlocutory mandatory injunctions are even more
rarely issued, and neither except upon the clearest equitable
grounds"); Shoemaker v. City of Los Angeles, 43 Cal. Rptr. 2d 774,
779 (Cal. Ct. App. 1995)(where a preliminary injunction mandates an
affirmative act that changes the status quo, it is scrutinized even
more closely for an abuse of discretion).

Mooney argues that he has met the four prerequisites for the
issuance of a mandatory preliminary injunction: (1) substantial
likelihood of success on the merits; (2) substantial threat of

18

irreparable injury if the injunction were not granted; (3) that the threatened injury to plaintiff outweighs the harm an injunction may cause defendant; and (4) that granting the injunction would not disserve the public interest. Church v. City of Huntsville, 30 F.3d 1332, 1341-42 (11th Cir. 1994). As the movant, Mooney carries the heavy burden of persuading the Court to issue a mandatory preliminary injunction. See Canal Auth. of Fla. v. Callaway, 489 F.2d 567 (5th Cir. 1974).

The Court disagrees with Mooney's contention that he has met all four prerequisites. Even if Mooney were able to meet the three other prerequisites for the issuance of a preliminary injunction, Mooney has not met his high burden to prove that there is a substantial threat of irreparable injury to him if the injunction is not granted. A showing of irreparable harm is the *sine qua non* for all injunctive relief. Frejlach v. Butler, 573 F.2d 1026 (8th Cir. 1978). The moving party must persuade the Court that the asserted irreparable harm is "neither remote nor speculative, but actual and imminent." Siegel, 234 F.3d at 1176 (citing Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990)).

In his Motion, Mooney states that "OMG's cavalier regard for its responsibilities will have immediate and irreparably harmful consequences for Mooney, putting him in a position where he is virtually certain to lose his home and cannot pay his bills as they come due." (Doc. # 11-2, pp. 1-2). Mooney's Affidavit, however,

clarifies that the loss of his home is only "likely," not "virtually certain." (Doc. # 11-3, ¶ 19). In paragraph 19 of his Affidavit, Mooney states that it is "highly unlikely" that he will be able to obtain a mortgage on his home unless he has an income stream. (Id.). In the same paragraph he states that it is "unlikely" that he can obtain a mortgage and that it is "likely" that the IRS will place a lien on his home and foreclose on it. (Id.). Statements that certain events are "likely" or even "highly unlikely" to occur are not sufficient to meet the heavy burden of proving that the threat of losing his home is actual and imminent.

OMG argues that even if Mooney were to prove that there was a substantial threat that he would lose his home, the loss of a home is equivalent to financial loss, which is not a sufficient ground to establish irreparable harm warranting injunctive relief. The Court disagrees with OMG on this point, because real estate is generally considered unique in the law, and there is no guarantee that he will be able to re-acquire his home if he loses it. See Sipes v. Atl. Gulf Cmtys. Corp., 84 F.3d 1364, 1370 (11th Cir. 1996)(discussing the unique nature of land). Nonetheless, although it finds that a substantial threat of losing his home would constitute irreparable harm, the Court does not find that Mooney has shown that such a substantial threat exists. The Court reminds Mooney that the burden of persuasion rests firmly on his shoulders on this issue, and the burden in a request for a mandatory

injunction is particularly high.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant's Motion for Preliminary Injunction (Doc. # 11) is **DENIED.** Furthermore, for the reasons stated above, Plaintiff's Motion to Compel Arbitration (Doc. # 25) is also **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this <u>11th</u> day of January, 2006.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to:

All Counsel of Record